# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| JOHN JOSEPH CALDWELL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JEFF A. GREEN, Individually and ) <br> in his official capacity as Deputy ) <br> Sheriff of Dickenson County, VA ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> BOBBY G. HAMMONS, ) <br> Individually and in his official ) <br> capacity as Deputy Sheriff of ) <br> Dickenson County, VA ) <br> ) <br> Defendant. | **MEMORANDUM OPINION** <br> Civil Action No. 1:06cv00063 <br><br><br> By: GLEN M. WILLIAMS <br> Senior United States District <br> Judge |

This case was brought before the court by the plaintiff, John Joseph Caldwell, ("Caldwell"), against Deputy Sheriff Jeff A. Green, ("Green"), and Sheriff Bobby G. Hammons, ("Hammons"), of Dickenson County, Virginia, for alleged violations of 42 U.S.C. §§ 1983, 1986 and 1988. The plaintiff also alleges state law tort claims for battery, false arrest, false imprisonment, negligent infliction of emotional distress and malicious prosecution. This court has jurisdiction over the federal claims pursuant to federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 and has supplemental jurisdiction over the state law

claims pursuant to 28 U.S.C. § 1367. Before the court is the motion of Green and Hammons to dismiss this case for the failure of the plaintiff to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), (Docket Item No. 6) ("Motion").

## I. Facts

For the purpose of the court's consideration of this motion, the facts alleged in the plaintiff's complaint will be accepted as true. In 2004, Green was a deputy sheriff in Dickenson County, Virginia and his supervisor was Hammons, the elected sheriff of Dickenson County. In his capacity as a sheriff's deputy, Green used informants in his investigations of drug activity in the county.

Green began using Curtis Hale, ("Hale"), as an informant beginning in 2004. Hammons may have known that Green was using Hale as an informant, but at no time did Hammons take any action to stop this use of Hale. It is also noted that Hale sold drugs and was involved in a drug deal on January 24, 2004, for which he was later indicted.

In 2004, Green received information from Hale that "John Caldwell," a resident of Montgomery County, Virginia, had illegally sold him drugs on January 24 and 25, 2004. Acting on this information, Green obtained a picture of John Joseph Caldwell from the Department of Motor Vehicles and showed it to Hale. At that time John Joseph Caldwell resided in Montgomery County and had no criminal record. Based on the photograph, Hale positively identified John Joseph Caldwell as the man who sold him drugs in January.

On September 13, 2004, Green was called to testify before a grand jury in Dickenson County. He testified truthfully to the information provided to him by Hale. In so doing, he testified that John Joseph Caldwell was identified by Hale as the "John Caldwell" who had sold him drugs illegally in January. As a result of this testimony, the grand jury returned a seven-count indictment against John Joseph Caldwell for distributing controlled substances.

On May 28, 2005, John Joseph Caldwell was arrested by a police officer in Christiansburg, Virginia, and was taken to Dickenson County. He remained in jail until June 11, 2005, when he was released on bail. Caldwell asserted that he was not the correct "John Caldwell." It is unclear to whom this was asserted, but it does not appear that the Sheriff's Department investigated these claims. Green, however, did provide the Commonwealth's Attorney for Dickenson County transcripts of tape recorded drug transactions which he received from Hale. Green believed these transcripts included evidence of "John Caldwell's" alleged January drug transactions. However, these tapes had been fabricated by Hale.

At some point after the grand jury indicted John Joseph Caldwell a large number of the indictments obtained in Dickenson County during 2004 based on information provided by Hale were dismissed.

In February 2006, John Joseph Caldwell, with the aid of a private investigator and his attorney, was able to convince the Commonwealth's Attorney that he was not the "John Caldwell" that had sold drugs to Hale. The Commonwealth's Attorney then dismissed the indictment against John Joseph

Caldwell *nolle prosequi.*

An individual by the name of John Clinton Caldwell is currently being prosecuted for the drug offenses Hale described. John Clinton Caldwell was also a resident of Montgomery County with an extensive criminal record, but Green was unable to discover his existence or locate a picture to show Hale during the investigation or any time subsequent.

## II. Analysis of 12(b)(6) Grounds for the Motion to Dismiss

A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a compliant. In considering such a motion, the court should accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff. *See De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).

In order to grant the motion it must appear certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). When a 12(b)(6) motion deals with a civil rights complaint, the court should not dismiss the claim unless it appears certain that the plaintiff is not entitled to relief under any legal theory which might plausibly be suggested by the facts alleged. *Harrison v. United States Postal Service*, 840 F.2d 1149, 1152 (4th Cir. 1988). However, the court need not accept as true the legal conclusions set forth in a plaintiff's complaint. *See Edwards*, 178 F.3d at 244. Furthermore, mere legal conclusions couched as factual allegations need not be accepted as true. *Assa'ad-Faltas v.*

-4-

*Virginia,* 738 F. Supp. 982, 985 (E.D.Va. 1989) (citing *Papasan v. Allain* 478 U.S. 265, 286 (1986)).

## *A. Civil Rights Claim Under 42 U.S.C. § 1983.*

The plaintiff's primary claim is a violation of 42 U.S.C. § 1983. To state a claim under § 1983 one must allege that a defendant (1) acted under color of state law and (2) deprived the plaintiff of a constitutional right, privilege or immunity. *See* 42 U.S.C.A. § 1983 (West Supp. 2003). This section should be broadly construed. *See Dennis v. Higgins,* 498 U.S. 439 (1991). However, it should be construed to respect proper balance between the states and the federal government in law enforcement. *See Stefanelli v. Minard,* 342 U.S. 117 (1945) (quoting *Screws v. U.S.,* 325 U.S. 91, 108 (1945)).

Green and Hammons do not challenge that Caldwell's claims are based on actions the defendants performed under color of state law. The dispute over this motion to dismiss centers upon whether the second component of a § 1983 claim, the deprivation of a constitutional right, has been properly pleaded.

As the basis for his § 1983 claim, Caldwell alleges that his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution were infringed by Green and Hammons. However, the plaintiff's complaint and the plaintiff's response to the defendant's motion to dismiss provide facts dealing with violations of the Fourth and Fourteenth Amendments only. The constitutional violations Caldwell alleges are that he was subject to an unreasonable seizure of his person by a state official and that he was deprived of his liberty by a state

official. There was no attempt by the plaintiff to set forth any facts alleging any violation under the Fifth Amendment.

Therefore, the court will examine only the alleged violations of the Fourth and Fourteenth Amendments. The court will separately address the alleged constitutional violations and determine if the plaintiff has meet the legal requirements to establish a claim under § 1983. This analysis will begin with the claims against Green. The claims against Sheriff Hammons are all derived from the actions of Green. Therefore, if Green's actions are found not to violate § 1983, Hammons actions as Green's supervisor will not violate § 1983.

*1. Fourth Amendment Claim Against Green Based on His Initiation of Caldwell's Prosecution*

The Fourth Amendment claim asserted by Caldwell is that he was arrested without probable cause and, thus, subjected to an unreasonable seizure of his person in violation of § 1983. Caldwell is essentially asserting a constitutional tort claim of malicious prosecution based on Fourth Circuit precedent from *Goodwin v. Metts*, 885 F.2d 157 (4th Cir.1989), and *Lewis v. McDorman*, 820 F.Supp. 1001 (W.D.Va. 1992).

The plaintiff acknowledges that Green did not personally arrest Caldwell or obtain the arrest warrant. Instead, the arrest was pursuant to an indictment returned by a Dickenson County grand jury. However, these facts alone are not grounds for dismissal. The Fourth Circuit addressed this issue in *Goodwin,* in the context of a police officer who withheld exculpatory information and induced a prosecutor to

-6-

bring a case they would not have otherwise brought. *See* 885 F.2d at 162. The court concluded that a police officer cannot escape liability simply because he had no power to terminate a prosecution once it began, if that officer initiated the prosecution. *See Goodwin*, 885 F.2d at 162. However, as noted by Judge Crigler in *Lewis v. McDorman*, 820 F.Supp. at 1005 (discussing the *Goodwin* case also in the context of a law enforcement officer withholding potentially exculpatory information), "the relevant issue was causation." If the defendant's actions tainted the prosecutor's decision to bring the case or caused the prosecution to continue when it otherwise would have been terminated, the defendant can be held liable.

Green did perform an investigation, which likely led to his grand jury appearance. He testified to the results of that investigation before a grand jury and provided information to the Commonwealth's Attorney after the indictment. Before the grand jury, Green revealed information on the commission of drug crimes committed by a "John Caldwell," which were described to him by his informant Hale. He also identified John Joseph Caldwell as the man identified by Hale. The result of Green's investigation and testimony was the indictment of John Joseph Caldwell and, arguably, the initiation of Caldwell's prosecution. By providing additional information to the prosecutor after the indictment, Green's actions arguably may have caused the prosecution of Caldwell to continue. Therefore, the court will take a deeper look at the facts presented by Caldwell to determine if he has stated a claim by which relief can be granted.

The actions of Green that Caldwell alleged violated his rights are factually distinct from those described in the *Goodwin* and *Lewis* cases. In this case, no facts are alleged to support a finding that Green knowingly withheld evidence

which could exculpate Caldwell. Nor has it been alleged that he did anything to coerce the prosecutor to proceed with a case that he would not have otherwise brought. In addition, even though there may have been some connection between Green's investigation and the grand jury proceedings, this would establish only that Green's actions started the wheels of justice in motion leading to Caldwell's arrest. It does not establish that Green did so wrongfully as suggested by the *Goodwin* and *Lewis* precedents. Furthermore, to survive a motion to dismiss a § 1983 claim based on these two cases, Caldwell would have to allege facts to establish a malicious prosecution.

Both the *Goodwin* and *Lewis* cases make it clear that a claim of malicious prosecution amounting to a constitutional deprivation of rights requires the plaintiff to prove all elements of a state law tort of malicious prosecution. *Goodwin*, 885 F.2d. at 160 n.1; *Lewis*, 820 F.Supp. at 1006. Therefore, in Virginia, Caldwell must allege facts that show: (1) that prosecution was set on foot by the defendant and that it terminated in a manner not favorable to the plaintiff; (2) that it was instituted or procured by the cooperation of the defendant; (3) that it was without probable cause; and (4) that it was malicious. *Oxenham v. Johnson*, 241 Va. 281, 287, 402 S.E.2d 1, 4 (1991). Caldwell fails to meet this standard because he does not allege facts to establish a lack of probable cause or malice.

With respect to probable cause in malicious prosecution actions, Virginia courts have held that incriminating information from someone admitting their participation in a crime creates probable cause. *See Southern Railway Co. v. Mosby*, 112 Va. 169, 177, 180-81, 70 S.E. 517, 519, 521 (1911). If there is no reason to doubt the truthfulness of the accomplice when the prosecution was

-8-

Case 1:06-cv-00063-GMW-PMS   Document 14   Filed 09/07/06   Page 8 of 19   Pageid#: 65

initiated, there is still considered to be probable cause sufficient to negate a malicious prosecution claim even if the witness was later shown to be unworthy of belief. *See Southern Railway Co.*, 112 Va. at 177; 70 S.E. at 519. Furthermore, the facts provided to the defendant by an informant need not be true, the defendant need only to reasonably believe they were true at the time the proceeding was instituted. *See Southern Railway Co.*, 112 Va. at 180; 70 S.E. at 520-21. In addition, where facts are admitted, the court determines as a matter of law whether they amount to probable cause. *See Bain v. Phillips*, 217 Va. 387, 228 S.E.2d 576 (1976); *Clarke v. Montgomery Ward & Co.*, 199 F.2d 720 (4th Cir. 1952).

In evaluating this motion to dismiss, the facts presented by the plaintiff are assumed to be true, and the plaintiff receives all reasonable inferences from those facts. Therefore, the facts are treated as admitted, and the court may determine whether these admitted facts amount to probable cause as a matter of law.

Green received information by an informant, Hale, who was present at the time of the crimes alleged to have been committed by "John Caldwell." Hale was an accomplice in these crimes. In addition, Green took steps to corroborate Hale's tip by looking for a "John Caldwell" in the locality Hale described. Green located a picture of John Joseph Caldwell and presented this picture to Hale for identification of the culprit. Hale provided a positive identification of his accomplice. There was no evidence presented to support a claim that Green should have had any reason to doubt the information provided by Hale about his accomplice at the time of Green's investigation or at the time of Green's testimony before the grand jury.

Case 1:06-cv-00063-GMW-PMS   Document 14   Filed 09/07/06   Page 9 of 19   Pageid#: 66

The fact that a different "John Caldwell" from the same locality is now being prosecuted for these same crimes indicates that belief of the information dealing with the commission of a drug crime was entirely reasonable. Even if Hale's identification of Caldwell's picture was later shown to be unreliable, that does not negate Green's probable cause at the essential moment, when the proceeding was initiated. Therefore, based on the facts alleged, there is nothing to suggest that Green did not have probable cause as a matter of law.

In addition, Caldwell has not alleged facts to support a claim of malice. In Virginia malice may be inferred from the absence of probable cause. *Oxenham*, 241 Va. at 288-89; 402 S.E. at 5. However, malice must exist in fact and be proven like any other fact. *Freezer v. Miller*, 163 Va. 180, 203, 176 S.E. 159, 168 (1934). It may be inferred from facts and circumstances but is never presumed by law. *Freezer*, 163 Va. at 203, 176 S.E. 168. A wrongful intent must be shown and "neither lack of probable cause nor the mere failure to act as a reasonably prudent man under the circumstances in instituting the prosecution is the same thing as malice." *Freezer*, 163 Va. at 204; 176 S.E. at 168. Malice and probable cause must both be proved to make a claim of malicious prosecution. *See Southern Railway Co.*, 112 Va. at 179, 70 S.E. at 520.

Because Caldwell failed to establish a lack of probable cause as a matter of law, it cannot be used to infer malice. Furthermore, Caldwell would have to provide factual support from which malice could be inferred even if probable cause was found. The facts of this case do not support such a finding. There has been nothing alleged by the plaintiff to suggest that Green intended to have the wrong person prosecuted for the crimes described by Hale. There have been no

allegations that Green withheld potentially exculpatory evidence or even urged the prosecution. There are also no facts provided that could support any inference of wrongful intent on the part of Green. Allegations merely amounting to negligence does not establish malice. Thus, Caldwell has also failed to demonstrate malice.

Caldwell has failed to provide any evidence of a lack of probable cause or that Green acted maliciously. Therefore, Caldwell has failed, as a matter of law, to state a claim for malicious prosecution under Virginia law. Because no claim for malicious prosecution is possible under Virginia law, a § 1983 action based on Green initiating Caldwell's prosecution also must fail as a matter of law.

*2. Fourth Amendment Claim Against Green Based on His Grand Jury Testimony Initiating Caldwell's Prosecution*

Any constitutional rights violation based on Green's testimony before the grand jury also fails as a matter of law. Green was a witness called before a grand jury to testify truthfully. The Supreme Court has held that witnesses in judicial proceedings receive "absolute immunity from damages liability under § 1983 based on their testimony." *See Briscoe v. LaHue*, 460 U.S. 325, 326 (1983). In *Briscoe*, the Supreme Court affirmed absolute witness immunity already recognized in several circuits, including the Fourth Circuit. *Briscoe*, 460 U.S. at 328 n.4 (noting the holding in *Burke v. Miller*, 580 F.2d 108 (4th Cir. 1978)). However, the Supreme Court went further to assert that police officers who testify about the performance of their official duties, even perjuring themselves, may not be held liable in § 1983 cases. *Briscoe*, 460 U.S. at 326. The Court stated:

> When a police officer appears as a witness he may reasonably be viewed as acting like any other witness sworn to tell the truth — in which event he can make a strong claim to witness immunity; alternatively, he may be regarded as an official performing a critical role in the judicial process, which event he may seek the benefit afforded to other governmental participants in the same proceeding. Nothing in the language of the statute suggests that such a witness belongs in a narrow, special category lacking protection against damages suits.

*Briscoe*, 460 U.S. at 335-36.

In *Lewis v. McDorman*, Judge Crigler declined to extend this absolute immunity to a § 1983 case with a constitutional tort claim for malicious prosecution. 820 F.Supp. at 1007-8. However, *Lewis* and *Goodwin*, as previously discussed, dealt with situations where police officers withheld potentially exculpatory information from the grand jury and acted to affirmatively further the prosecution of the defendant. *Lewis*, 820 F.Supp. 1006; *Goodwin*, 885 F.2d 159-60. In *Lewis*, Judge Crigler indicated that *Briscoe* immunity was intended to protect law enforcement officers who were acting legitimately within the course of their duties. *See Lewis*, 820 F.Supp. at 1008. Only officers acting outside of their legitimate role in the judicial process by withholding exculpatory information or acting in bad faith, like the officers in the *Goodwin* and *Lewis* cases, should not receive *Briscoe* immunity. Therefore, officers who are acting in good faith within the course of their duties are entitled to *Briscoe* immunity.

Since *Lewis*, the principle of witness immunity was reaffirmed by the Fourth Circuit in *Lyles v. Sparks*, 79 F.3d 372 (4th Cir. 1996). Furthermore, the *Lyles* case specifically extended the protection of absolute immunity for government

-12-

witnesses to their grand jury testimony. *Lyles*, 79 F.3d at 378.

Prior to the grand jury proceedings, Green obtained information from his informant, Hale, that "John Caldwell" had sold him drugs. Green performed a cursory investigation in which he located a photograph of a person in the correct locality named "John Caldwell." He showed this picture to Hale who identified John Joseph Caldwell as the man who sold him drugs in late January 2004. Green then testified before the grand jury about Hale's positive identification of John Joseph Caldwell.

Caldwell has failed to provide any evidence that Green withheld any information at the time of his testimony before the grand jury or that he did anything violating the practices or procedures of the Dickenson County Sheriff's Department. At most, the allegations against Green amount to claims that, in hindsight, he could have conducted a more thorough investigation. There is no factual support provided for a determination that Green acted maliciously by testifying truthfully as to what he had been told by Hale. There is also no evidence offered to support a claim that at the time of his investigation, or at the time of his grand jury testimony, he lacked probable cause to believe Hale. In fact, the evidence presented tends to demonstrate that Green's belief of Hale was reasonable.

The fact that several indictments obtained based on information from Hale were dismissed at some point after the grand jury indicted John Joseph Caldwell is irrelevant to Green's state of mind at the time of his testimony. This case is unlike both *Goodwin* and *Lewis* because there are no facts alleged from which the court

-13-

could conclude that Green was not acting in good faith. Thus, Green should receive absolute immunity from § 1983 liability as dictated by both *Briscoe* and *Lyles* for any results of his testimony before the grand jury. This immunity should apply whether or not Green initiated the prosecution of this case because he did not do so with any bad faith or without probable cause. Therefore, Caldwell has failed to state a claim under § 1983 based on any testimony given by Green before the grand jury.

### 3. *Fourteenth Amendment Claim Against Green*

With respect to Caldwell's claims of deprivation of liberty based on violations of the Due Process Clause of the Fourteenth Amendment, the Supreme Court has held that an injury caused by the negligence of a state official is not a violation of the Due Process Clause creating a right redressable under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (affirming *Daniels v. Williams*, 748 F.2d 229 (4th Cir. 1985)). Furthermore, the Supreme Court held that there must be some deliberate or intentional action to violate the Due Process Clause to allow § 1983 recovery. *Daniels*, 474 U.S. at 330-31, 335.

The facts provided merely indicate that Green may have acted negligently in his initial investigation and in providing information from Hale after Caldwell had already been arrested. None of this amounts to the necessary, deliberate or intentional action required to create a violation of the Due Process Clause of the Fourteenth Amendment.

The only possible claim based on the facts presented by Caldwell is that

Green may have been negligent. However, as noted in *Lewis*, "Virginia has never recognized a cause of action based on negligent investigations or prosecution." 820 F.Supp. at 1008. There is no constitutional tort under Virginia law to serve as a basis for a § 1983 violation based on Green's actions. Thus, the plaintiff has failed to state a claim under § 1983 based on a denial of his right to liberty under the Fourteenth Amendment.

### 4. Claims Against Hammons

All of the claims against Hammons are based on the allegedly wrongful actions of Deputy Green. In particular, Caldwell claims that Hammons acted negligently by allowing the use of an allegedly unreliable informant. However, negligence alone is a legally insufficient grounds for a constitutional deprivation of rights under § 1983. *See Daniels*, 474 U.S. at 328. In addition, *respondeat superior* does not apply in § 1983 actions. *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Instead, to make a claim against a sheriff under § 1983, a plaintiff would need to allege a deliberate supervisory indifference or tacit authorization of misconduct by his deputies. *See Slakan*, 737 F.2d at 372. Documentation of widespread abuses are necessary to establish a sheriff's liability for constitutional violations by a subordinate. *See Slakan*, 737 F.2d at 373. Furthermore, the plaintiff "cannot satisfy his burden of proof by pointing to a single incident or isolated incidents." *Slakan*, 737 F.2d at 373.

This court has determined above that no violations of constitutional rights where properly alleged by Caldwell against Green, the only deputy against whom any were alleged. Because the sheriff's liability must be centered upon

supervisory indifference or tacit authorization leading to the violation of Caldwell's constitutional rights by his deputies, the claim against Hammons must fail. Furthermore, there were no facts provided that could possibly support such a claim against Hammons even if there had been an underlying violation by a Green. Therefore, Caldwell has failed to allege facts that state a claim upon which relief may be granted under § 1983 against Hammons.

## B. Civil Rights Claim under 42 U.S.C. § 1986.

Caldwell also makes a claim against Hammons under 42 U.S.C. § 1986. To state a claim upon which relief can be granted under § 1986 one must allege facts sufficient to support a cause of action under 42 U.S.C. § 1985. *Davis v. Hudgins*, 896 F.Supp. 561, 571 (E.D.Va. 1995), *affirmed* 87 F.3d 1308 (4th Cir. 1996). The elements of a claim under § 1985 are:

> (1) conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus, to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to plaintiff as (5) a consequence of an overt act committed by the defendants in connection with conspiracy.

*Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985).

The Fourth Circuit has held that in order to assert a claim under § 1985, a plaintiff "must show an agreement or a 'meeting of the minds' by the defendants to violate the claimant's constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). Furthermore, the Fourth Circuit noted in *Simmons* that

-16-

plaintiffs "rarely, if ever . . . set forth sufficient facts to establish a 1985 conspiracy" and that courts frequently grant motions to dismiss for these claims. *See Simmons*, 47 F.3d at 1377; *Davis*, 896 F.Supp. at 571.

The plaintiff in this case also has failed to allege facts sufficient to make a claim under § 1985 by failing to allege that any meeting of the minds occurred and by failing to allege any discriminatory intent. Therefore, Caldwell's claim that Hammons violated § 1986 also fails.

### C. 42 U.S.C. § 1988.

The plaintiff asserts a claim pursuant to 42 U.S.C. § 1988. It is unclear from the pleadings how the plaintiff intends § 1988 should be applied in this case. However, the plaintiff cannot contend that § 1988(a) was violated because this subsection is "merely procedural and does not create rights or confer jurisdiction." *Harris v. Obenshain*, 452 F.Supp. 1172 (E.D.Va. 1978). Instead, this section deals with damages remedies and will apply state damage remedies to a federal case if the federal remedies are inadequate to serve the policy expressed by the federal statute. *See Sullivan v. Little Hunting Park*, 396 U.S. 229, 240 (1969). Because the alleged federal violations under §§ 1983 and 1986 were dismissed above, there is no constitutional deprivation of a right to invoke this section. Therefore, it does not apply.

Alternatively, the plaintiff may have intended to make a claim under § 1988(b), which allows for the recovery of attorney fees incurred by the prevailing party in a civil rights action. Because the defendant's motion to dismiss the

Case 1:06-cv-00063-GMW-PMS   Document 14   Filed 09/07/06   Page 17 of 19   Pageid#: 74

plaintiff's causes of action under 42 U.S.C. §§ 1983 and 1986 will be granted, Caldwell will not be the prevailing party in a civil rights claim and, thus, cannot recover attorney's fees under § 1988(b) for these proceedings. Accordingly, the defendant's motion to dismiss with respect to the § 1988 claim also will be granted.

## D. State Law Claims

The basis of the plaintiff's federal jurisdiction for this complaint are the actions under 42 U.S.C. §§ 1983, 1986 and 1988. Because this complaint fails to state a federal claim as a matter of law, the supplemental jurisdiction based on 28 U.S.C. § 1367 for the various state law tort claims also will be deemed to have failed. These claims do not independently satisfy either federal question jurisdiction under 28 U.S.C. § 1331 or federal diversity jurisdiction under 28 U.S.C. § 1332. All parties involved in this case are residents of the Commonwealth of Virginia and have an available forum to contest these tort issues in state court. Therefore, the state law claims based on supplemental jurisdiction also will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## III. Conclusion

The court will grant the motion to dismiss made by Green and Hammons with respect to all of the plaintiff's claims. An appropriate order will be so entered.

**DATED:** This 7th day of September, 2006.

_/s/ Glen M. Williams_
_____
**GLEN M. WILLIAMS**
**SENIOR UNITED STATES DISTRICT JUDGE**